# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | **CRIMINAL NO. JKB-18-0326** |
| | * | |
| **MARQUISE MCCANTS, et al.** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Defendant Marquise McCants is charged with use of a firearm resulting in death during and in relation to a drug trafficking crime, a death eligible offense pursuant to 18 U.S.C. § 924(j). (ECF No. 32.) His trial is scheduled to begin on May 20, 2019, with an expected duration of three weeks. (ECF No. 50.) Attorney Gary Proctor, counsel for McCants, has moved to withdraw and has asked the Court to appoint alternate counsel.[1] (ECF No. 52.) For the reasons set forth below, the Court grants Proctor's motion in part.

Under 18 U.S.C. § 3005, indictment of a death eligible offense triggers a defendant's right to two attorneys, at least one of whom "shall be learned in the law applicable to capital cases." *Id*. Thus, in accordance with this statute, the Court previously appointed two attorneys to represent McCants: Gary Proctor as learned counsel and Jennifer Wicks as co-counsel. (*See* ECF Nos. 35, 45.) Since their appointment, however, two developments have arisen that call into question the

---

[1] Implicit in Proctor's motion seeking appointment of alternate counsel is his request that the new lawyer be one previously found to be "learned in the law applicable to capital cases," 18 U.S.C. § 3005, as he most certainly is.

contours of McCants' right to counsel under 18 U.S.C. § 3005. First, on January 25, 2019, the Government announced its intention not to seek the death penalty against either McCants or his co-defendant, Jonathan Edges. (ECF No. 49.) Then, on February 8, 2019, Proctor developed an irresolvable conflict and asked the Court to appoint alternate counsel to represent McCants alongside Wicks. (ECF No. 52.) Proctor qualifies as learned counsel but Wicks does not. Thus, the issue before the Court is whether the attorney appointed to replace Proctor must be "learned in the law applicable to capital cases," given that this is no longer a capital case. 18 U.S.C. § 3005.

The Court is mindful of the Fourth Circuit's holding in *United States v. Boone*, 245 F.3d 352 (4th Cir. 2001), that a defendant charged with a death eligible crime is entitled, under 18 U.S.C. § 3005, to representation by two attorneys regardless of whether the death penalty is actually sought.[2] *Id*. at 360–61. *See also United States v. Robinson*, 275 F.3d 371, 384 (4th Cir. 2001) ("Under *Boone,* the failure to provide Robinson with two attorneys throughout trial was plain error even though the Government withdrew its notice of intent to seek the death penalty."). Accordingly, the Court will appoint a second attorney to represent McCants.

---

[2] All other circuit courts that have considered the issue have held that, once the government announces that it does not seek the death penalty, the mandates of 18 U.S.C. § 3005 no longer apply. *See United States v. Cordova*, 806 F.3d 1085, 1101–02 (D.C. Cir. 2015) (holding that the mandate for two attorneys in 18 U.S.C. § 3005 only applies when the death penalty is actually being pursued); *United States v. Douglas,* 525 F.3d 225, 237 (2d Cir. 2008) ("[O]nce the government has formally informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of § 3005 and that section does not require the district court to continue the appointment of a second attorney."); *United States v. Waggoner,* 339 F.3d 915, 917–18 (9th Cir. 2003) (holding that the defendant was not entitled to be represented by two attorneys after the government filed formal notice that it did not intend to seek the death penalty); *United States v. Casseus,* 282 F.3d 253, 256 (3d Cir. 2002) (finding that any error in the failure of the district court to act on the defendants' requests to appoint death-penalty qualified counsel was harmless because the requests were rendered moot by the government's decision not to seek the death penalty); *In re Sterling–Suárez,* 306 F.3d 1170, 1175 (1st Cir. 2002) ("[I]n this case there *are* practical reasons to treat the case as capital from indictment forward, for purposes of appointing learned counsel, *until it becomes clear that the death penalty is no longer an option.*" (second emphasis added)); *United States v. Grimes,* 142 F.3d 1342, 1347 (11th Cir. 1998) (finding that the defendant was not entitled to two court-appointed lawyers once the government announced that it would not seek the death penalty).

However, the Court sees no purpose in requiring the newly appointed lawyer be "learned in the law applicable to capital cases," as this is no longer a capital case. 18 U.S.C. § 3005. Defendants in capital cases are appointed learned counsel because "death is different in kind from any other punishment," *Gregg v. Georgia*, 428 U.S. 153, 188 (1976), and because such cases involve unique procedural aspects. For instance, prior to the government's decision to seek or not to seek the death penalty, defense counsel may present mitigating factors counseling against the imposition of death. Then, if the government decides to seek the death penalty, the bifurcated nature of a death penalty trial requires that defense counsel understand the impact of the sentencing process on the guilt phase. When a defendant is no longer facing death, however, the requirement that an attorney be "learned in the law applicable to capital cases," rather than simply being an able practitioner adept at trying serious felonies, serves no function. 18 U.S.C. § 3005. *See also Robinson*, 275 F.3d at 384 (declining to reverse the defendant's conviction because, although the trial court erred in relieving one of the defendant's two attorneys from his duties after the government elected not to seek the death penalty, "the failure to provide a *non-capital* defendant with the benefit of a provision designed to provide additional protection to *capital* defendants … did not affect the fairness, integrity, or public reputation of judicial proceedings.").

In addition, mandating the appointment of learned counsel in this instance would disrupt the proceedings against McCants and Edges. The Court inquired into the availability of learned counsel with the Criminal Justice Act coordinators in this district and learned that, at this time, there are three attorneys designated as learned counsel that are sufficiently free of conflicts as to make them available to represent McCants. *See* Maureen Essex, 02/08/19 CJA Memorandum. Two of these attorneys, however, have scheduling conflicts that would require this Court to continue the trial, and the other attorney is unable to take on an additional case at this time. *Id*.

Weighing the delays that would be associated with continuing the trial until learned counsel becomes available against the harm to McCants of proceeding to trial without learned counsel in this non-capital case, and not interpreting *Boone* to specifically require the appointment of learned counsel in the peculiar circumstances of this case, the Court concludes that replacement counsel for Proctor need not be "learned in the law applicable to capital cases." 18 U.S.C. § 3005. Accordingly, in an accompanying order, the Clerk will be directed to nominate a member of the Court's CJA felony panel to replace Proctor, without regard to whether that lawyer is learned in the law applicable to capital cases.

DATED this 11th day of February, 2019.

BY THE COURT:

/s/
James K. Bredar
Chief Judge